UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Minnesota Laborers Health and, Welfare Fund; Minnesota Laborers Pension Fund; Minnesota Laborers Vacation Fund; Construction Laborers' Education and Training Fund of Minnesota and North Dakota; Minnesota Laborers Employers Cooperation and Education Trust,**

**Plaintiffs,**

v.

**RR Miller Enterprises, Inc., d/b/a Excel Environmental,**

**Defendant.**

**Civil No. 00-2784 (DSD/SRN)**

**REPORT AND RECOMMENDATION**

---

Pamela Hodges Nissen, Esq. on behalf of Plaintiffs.

James P. Mulvahill, Esq. on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on May 9, 2001, on Plaintiffs' Motion to Dismiss Defendant's Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).[1] (Doc. No. 5.) The motion has been referred to the undersigned pursuant

---

[1] The Counterclaim originally sought the following relief: (1) return of mistakenly paid funds under ERISA § 403(c)(1), 29 U.S.C. § 1103(c) and the principles of equity; and (2) recission of the union contract due to fraud in the inducement. (Pls.' Mem. in Supp., Doc. No. 6, pp. 9, 14.) On April 18, 2001, Defendant filed an Amended Counterclaim seeking relief only under count one for return of mistakenly paid funds. (Doc. No. 16.) Therefore, Plaintiffs' Motion to Dismiss will be construed in conformity with the single count alleged in the Amended Counterclaim.

JUN 12 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends that Plaintiffs' Motion to Dismiss Defendant's Counterclaim be denied.

## I. BACKGROUND

Plaintiffs are multi-employer, jointly trusteed fringe benefit plans created and maintained pursuant to the Labor Management Relations Act of 1947, § 320(c)(5) as amended 29 U.S.C.§ 186(c)(5). (Compl., Doc. No. 1, ¶¶ 1-5.) Defendant is a Minnesota business that is engaged in the construction and/or cleaning business, and is an employer within the meaning of ERISA, 29 U.S.C. § 1002(5). (Am. Countercl., Doc. No. 16, Countercl., ¶ 6.)

On June 25, 1998, Defendant entered into an Asbestos Abatement Acceptance Agreement with Laborers' Union Local No. 563 ("Union"), in which the parties agreed to be bound to the terms of the collective bargaining agreement as negotiated between the Minnesota Asbestos Abatement Contractors Association and the Laborers' District Council of Minnesota. (Doc. No. 12, Ex. A.) On May 3, 1999, Defendant entered into a second Asbestos Abatement Acceptance Agreement with the Union, accepting the collective bargaining agreement negotiated between the Minnesota Environmental Contractors Association and the Laborers' District Council of Minnesota and North Dakota. (Doc. No. 12, Ex. B.) According to Plaintiffs, the collective bargaining agreements required Defendant to make fringe benefit contributions to Plaintiffs on behalf of its employees. (Compl., Doc. No. 1, ¶ 11.)

During an audit of Defendant's payroll and employment records, Plaintiffs allegedly discovered that Defendant had not paid fringe benefits for various employees covered by the collective bargaining agreements. (Compl., Doc. No. 1, ¶¶ 15-17.) In December 2000,

Plaintiffs brought suit against Defendant for the collection of unpaid contributions pursuant to the Employee Retirement Income Security Act of 1974, § 502(a)(3), as amended 29 U.S.C. §1132(a)(3), and § 515 as amended 29 U.S.C. § 1145 ("ERISA"). (Compl., Doc. No. 1, ¶ 7.)

Defendant claims that it was not required to make fringe benefits payments to Plaintiffs due to a separate express agreement between itself and the Union, which exempted certain jobs from coverage under the collective bargaining agreements. (Am. Answer and Countercl., Doc. No. 16, ¶ 11, and Ex. A.) According to Defendant, Plaintiffs were aware of the side agreement. (Id., Count I, ¶ 2.)

Defendant asserts that despite the side agreement, it erroneously, through a mistake of fact, paid approximately $96,617.04 in contributions relating to the jobs that were specifically excluded by the agreement of the parties. (Id., ¶¶ 2- 3.) On December 12, 2000, Defendant sent a letter Plaintiffs seeking the return of the mistakenly paid funds. (Id., ¶ 3.) Plaintiffs refused to refund the excess contributions, prompting Defendant to seek a refund of the contributions pursuant to ERISA § 403(c)(2)(A), as amended 29 U.S.C. § 1003 (c), in a counterclaim to Plaintiffs' suit. (Id., ¶ 4.)

## II. ANALYSIS

### A. Standard of Review

Plaintiffs seek to dismiss Defendant's Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 5.) In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the complaint as true. Hishon v. 799 King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984). All reasonable inferences from the complaint

must be drawn in favor of the nonmoving party. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

In support of its motion, Plaintiffs submitted the following additional materials: (1) the affidavit of Rod Skoog, the Funds Coordinator; (2) copies of the collective bargaining agreements at issue; and (3) a letter from John Miller of Excel Environmental to Mr. Skoog. (Doc. No. 12.) In response, Defendant offered the affidavits of Rodai Engle, an administrative assistant at Excel Environmental, and Darren Aamot, the audit coordinator at Excel Environmental. (Doc. Nos. 8, 9.) Where on a Rule 12(b)(6) motion "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6); see also Buck v. FDIC, 75 F.3d 1285, 1288 & n. 3 (8th Cir. 1996). The Court has elected not to review the supplemental affidavits and views this matter as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

The Court will, however, review other limited documents. The Court "may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quotations omitted). The language of the acceptance agreements and the collective bargaining agreements is directly at issue in this case and is embraced by the pleadings. (Compl., Doc. No. 1, ¶ 9, Am. Countercl., Doc. No. 16, Count I, ¶

1.) Therefore, the Court will consider the two collective bargaining agreements and the two Acceptance of Agreements included in Plaintiffs' submissions. (Doc. No. 12, Exs. A, B, C, D.) In addition, the Court will also consider the June 26, 1998, letter from the Union to Defendant excluding certain jobs from the collective bargaining agreements that is attached to the Amended Counterclaim. (Doc. No. 16, Ex. A.) See 5A, Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 299 (1990) (courts may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

**B. The Merits**

By way of Counterclaim, Defendant seeks, pursuant to ERISA § 403(c)(2)(A) and this Court's equity powers, the return of the excess contributions made to Plaintiffs. (Am. Countercl., Doc. No. 16., Count I, ¶ 4.) Plaintiffs seek to dismiss the Counterclaim, arguing that: (1) it is not bound by an undisclosed side agreement between Defendant and the union; (2) ERISA § 403(c) does not provide an employer with a statutory cause of action for return of contributions made under a mistake of fact; and (3) Defendant fails to allege a factual basis for a return of the funds based on an equitable claim. (Pl.s' Mem., Doc. No. 6, p. 13.)

**1. Undisclosed Side Agreements**

Plaintiffs assert that section 515 of ERISA protects the trust funds from undisclosed agreements or understandings between the union and the employer to the extent that those agreements are different from the terms of the written collective bargaining agreement. (Pls.' Mem., Doc. No. 6, p. 10.) Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "Congress intended that this section would simplify actions to collect delinquent contributions, avoid costly litigation, and enhance the actuarial planning necessary to the administration of multiemployer pension plans." Central States, S.E. & S.W. Areas Pension Fund v. Independent Fruit and Produce Co., 919 F.2d 1343, 1348 (8th Cir. 1990). Section 515 gives pension funds, such as Plaintiffs, the right to enforce the writings according to their terms. Central States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1149 (7th Cir. 1989) (en banc). A pension fund's reliance upon the terms of a collective bargaining agreement may not be undermined by oral understandings between the employer and the union that contradict the writing, or by undisclosed agreements between the employer and the union. Central States, S.E. & S.W. Areas Pension Fund v. Transport, Inc., 183 F.3d 623, 628-29 (7th Cir. 1999); Gerber Truck Serv., 870 F.2d at 1154. Neither of these restrictions apply in this case.

Here, Defendant alleges that Plaintiffs had notice of the written agreement between itself and the Union to exclude certain jobs from the collective bargaining agreements. It appears that on June 25, 1998, Defendant signed an Acceptance of Agreement to abide by the terms and conditions of the collective bargaining agreement.[2] (Doc. No. 12, Ex. A.) Article

---

[2] Defendant states that the Acceptance of Agreement was signed on June 26, 1998. (Def.'s

twenty-four of the collective bargaining agreement sates that: "[a]ny party shall have the right to terminate or amend this Agreement by giving notice to the other party." (Id.) On June 26, 1998, the Union agreed with Defendant, in writing, to exclude certain jobs from the terms of collective bargaining agreement. (Am. Countercl., Doc. No. 16, Ex. A.) Defendant asserts that this agreement was in fact disclosed to Plaintiffs. (Am. Countercl., Doc. No. 26, ¶ 2.) In addition, the second Acceptance Agreement, signed on May 3, 1999, states that "the aforementioned Agreement refers to the previously negotiated Agreements by the parties." (Doc. No. 12, Ex. B.) This statement evidences the parties' intent to allow modification to the basic collective bargaining agreement by agreement of the parties. As stated, Defendant alleges that Plaintiffs had notice of such an agreement.

If Defendant is able to prove that Plaintiffs were notified of the June 26, 1998, alterations, then Plaintiffs would not have been entitled to collect benefits relating to hours worked by union employees on the excluded projects. See Teamsters Indus. Employees

---

Mem., Doc. No. 7, p. 2.) Defendant further asserts that the Acceptance of Agreement "refers to the previously negotiated Agreements by the parties," which includes the side agreement between itself and the Union. (Doc. No. 12, Ex. A.) Defendant implies that these two documents were executed contemporaneously, or that the side agreement was signed prior to the Acceptance of Agreement; therefore, Defendant argues that the two documents should be read together. This interpretation is consistent with the language of the side agreement, which states "per our conversation, Local #563 has agreed to exclude the following jobs from the contract agreement that we *will* sign with you." (Doc. No. 16, Ex. A.) The future-tense language in the side agreement suggests that it was signed prior to the execution of the Acceptance of Agreement. However, the date on the Acceptance of Agreement appears to read June 25, 1998; one day before the date on the side agreement. (Doc. No. 12, Ex. A.) Although the record is unclear on this point, even a subsequent agreement between the employer and the union is contemplated by Article Twenty Four of the collective bargaining agreement. (Id.)

Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 138 (3d Cir.1993) (multi-employer funds are not permitted to "enforce a nonexistent contractual obligation"). Plaintiffs dispute the accuracy of this allegation, but such considerations are beyond this Court's purview on a motion to dismiss for the failure to state a claim.

The Court finds that Defendant's allegations in the Counterclaim are sufficient to withstand a Rule 12(b)(6) motion.

**2. Right to Reimbursement**

Plaintiffs next argue that even if they were aware of the side agreement between Defendant and the Union, that they are still entitled to judgment as a matter of law because (1) ERISA § 403(c)(2), 29 U.S.C. 1103(c)(2)(A)(ii), does not provide an employer with a statutory cause of action for return of contributions made under a mistake of fact, and (2) Defendant fails to allege a factual basis for a return of the funds based on an equitable claim. (Pl.s' Mem., Doc. No. 6, p. 13.)

ERISA § 403(c)(2)(A)(ii), provides, in relevant part:

> if such contribution or payment is made by an employer to a multiemployer plan by a mistake of fact or law . . . paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

29 U.S.C. § 1103(c)(2)(A)(ii). The Circuits disagree on whether ERISA's "shall not prohibit" language is permissive, suggestive of a statutory cause of action, supportive of a common law

action, or totally insignificant.[3] Most recently, in this District, the Court stated that:

> This language [29 U.S.C. § 1103(c)(2)(A)(ii)] demonstrates that a fund should not be required in all circumstances to return mistakenly made contributions for which timely application is made. However, it does not address the question of whether return is required when equity so demands. In light of the legislative silence, of 29 U.S.C. s 1001(a), and of the virtual nullification of s 1103(c)(2)(A) that would result from defendant's interpretation of the provision, the court concludes that s 1103(c) (2)(A) in some circumstances requires that funds return mistakenly made contributions to employers.

E.M. Trucking v. Central Sates, S.W. & S.W. Area Pension Plan, 517 F.Supp. 1122, 1125 (D. Minn. 1981).

Whether the principles of equity require Plaintiffs to return the payments mistakenly made by Defendant is one of fact. Id. Defendant alleges that it paid $97,617.04 in contributions relating to jobs that were specifically excluded by express agreement with union due to a mistake of fact. (Am. Countercl., Doc. 16, Count I, ¶ 3.) In addition, Defendant

---

[3]Three circuits have ruled that employers may pursue a federal common law remedy based on an unjust enrichment theory. See Kwatcher v. Massachusetts Service Employees' Pension Fund, 879 F.2d 957 (1st Cir. 1989); Plucinski v. I.A.M. National Pension Fund, 875 F.2d 1052 (3d Cir. 1989); and Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund, 794 F.2d 221 (6th Cir. 1986). Two circuits have ruled that federal common law does not provide a remedy. See Dime Coal Company v. Combs, 796 F.2d 394 (11th Cir. 1986); and South Central United Foods & Commercial Workers Union v. C & G Mkt., 836 F.2d 21 (5th Cir. 1988). Other circuits have permitted employers to recover overpayments without articulating a particular standard. See Dumac Forestry Serv. v. International Bhd. of Elec.Workers, 814 F.2d 79 (2d Cir. 1987) (return of contributions permitted only when trustee abuses discretionary refund authority); Peckham v. Board of Trustees of Intl. Bhd. of Painters, 719 F.2d 1063 (10th Cir. 1983) (similar), modified, 724 F.2d 100 (10th Cir. 1983); Central States, S.E. & S.W. Areas Pension Fund v. Wholesale Produce Supply Co., 611 F.2d 694 (8th Cir. 1979) (per curiam) (affirming employer offset under § 1103(c)(2)(A)).

alleges that Plaintiffs knew of the agreement exempting certain jobs from the collective bargaining agreement, and were also notified of the alleged mistake in overpayments. (Id., ¶¶ 2- 3.) There is a disputed question of material fact as to whether the contributions were made by mistake, or were appropriately paid. The answer to that question will bear on the equities of this case; therefore, the Court will not seek to balance the interests of equity on the present record. As to the matter before the Court today, the sufficiency of Defendant's Counterclaim, the Court finds that Defendant's Counterclaim alleges a sufficient claim for equitable relief to survive a Rule 12(b)(6) motion.

## III. RECOMMENDATION

For the foregoing reasons, and based upon all of the files, records, and proceedings herein, it is hereby recommended that Plaintiffs' Motion to Dismiss Defendant's Counterclaim (Doc. No. 5) be **DENIED**.

Dated: June 11, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation within 10 days after being served with a copy thereof. The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.